UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

EDGAR ZERMENO,

    Plaintiff,

v.

STRATOSPHERE CORPORATION, *et al*.,

    Defendants.

Case No. 07-CV-00581-KJD-LRL

**ORDER**

Currently before the Court is Defendant Stratosphere Corporation d/b/a Stratosphere Hotel & Casino's ("Stratosphere") Motion for Summary Judgment (#32). Plaintiff Edgar Zermeno filed a Response in Opposition (#35), to which Defendant filed a Reply (#39).

**I. Background**

Plaintiff Zermeno commenced the present action against Defendant Stratosphere on May 2, 2007. Plaintiff avers that as a direct result of Defendant's actions Plaintiff was falsely arrested, falsely imprisoned, and suffered intentional infliction of emotional distress.[1]

---

[1] Plaintiff's Complaint also alleged slander per se. (See Compl.). The Court, however, dismissed this claim, holding that it violated Nevada's Anti-SLAPP statute. (See #29). Additionally, Defendant James Goding was dismissed from this case pursuant to Federal Rule of Civil Procedure 4(m). (See #7).

This action arises out of events that occurred on May 5 and 6, 2005. On those dates, Plaintiff, a former police officer for the city of Torrance, California, stayed and gambled at the Stratosphere Hotel and Casino in Las Vegas, Nevada. (See Mot. Summ. J., Exh. A, 29:25–30:7, 31:2–6). While gambling at the Stratosphere on May 5, Plaintiff interacted with blackjack dealer Edgar P. Lovinaria ("Lovinaria"), whose play had attracted the attention of the Stratosphere security. (See Mot. Summ. J., Exh. C, 10:22–11:7, 22:5–23:8). After observing Lovinaria through surveillance, Stratosphere notified the Nevada Gaming Control Board ("Gaming") that it suspected Lovinaria and others may be cheating. Gaming assigned Agent William Olliges to investigate the allegations, who, after viewing the surveillance video provided by the Stratosphere from May 5, 2005, determined that the suspicious behavior he observed warranted further investigation. (See Mot. Summ. J., Exh. D, 59:22–60:18, 71:1–85:7; Mot. Summ. J., Exh. E, 14:10–14). Accordingly, on May 6, 2005 at 2:30 a.m., Agent Olliges, and two other Gaming agents, went to the Stratosphere to observe Lovinaria's shift. (See Mot. Summ. J., Exh. D, 92:2–24, 104:8–11; Mot. Summ. J., Exh. E, 64:19–65:2). During this observation, Plaintiff Zermeno appeared at Lovinaria's table and Agent Olliges witnessed what he believed to be affirmative acts of cheating by both Lovinaria and Zermeno. (See Mot. Summ. J., Exh. D, 100:17–103:14, 111:18–21, 114:9–12; Mot. Summ. J., Exh. E, 55:17–57:9). As Agent Olliges later testified, based on these observations he determined that he "had probable cause to detain . . . Mr. Zermeno." (See Mot. Summ. J., Exh. D, 103:20–104:11, 116:10–13).

Around 3:30 a.m. on May 6, 2005, Stratosphere security escorted Agent Olliges and the other two Gaming agents to the casino floor to detain Lovinaria and Zermeno. (See Mot. Summ. J., Exh. F). After Lovinaria and Zermeno had been detained by the Gaming agents, they were escorted to the casino's holding room. (See Mot. Summ. J., Exh. D, 106:17–107:22). Agent Olliges then interviewed Zermeno for approximately two and one half hours. (See Mot. Summ. J., Exh. F, 58:14–59:6). Plaintiff offers no evidence, nor does he claim, that Plaintiff was subjected to any unreasonable treatment during this interview. Following this interview, Agent Olliges arrested

Lovinaria and Zermeno for cheating at gambling and conspiracy to cheat at gambling. (See Mot. Summ. J., Exh. A, 57:7–58:4; Mot. Summ. J., Exh. B, 9:13–5).

After Zermeno's arrest, a preliminary hearing was conducted by a Las Vegas Justice Court to determine whether or not there was sufficient probable cause to bind Zermeno over for trial. After a three day hearing, the Justice Court ruled such probable cause did exist and allowed criminal proceedings against Zermeno to move forward. (See Mot. Summ. J., Exh. J). On September 26, 2006, Zermeno entered a *nolo contendre* plea to a lesser offense in order to avoid trial. As part of the plea, the matter was continued for a period of ninety days and the State agreed not to oppose dismissal if Zermeno stayed out of trouble during that time. (See Mot. Summ. J., Exh. K, 6:14–20, 8:2–6). On December 26, 2006, following a period of good behavior on the part of Zermeno, the charges against him were dismissed. (See Mot. Summ. J., Exh. B, 48:21–49:2).

As a result of Zermeno's arrest, he was placed on administrative leave by the City of Torrance Police Department, (see Mot. Summ. J., Exh. B, 22:8–21), and was eventually terminated on August 26, 2005, (see Mot. Summ. J., Exh. M). Subsequent to his termination, Plaintiff filed the present action, alleging that Defendant Stratosphere's actions resulted in false arrest, false imprisonment, and intentional infliction of emotion distress.

Defendant's Motion for Summary Judgment seeks that the Court dismiss Plaintiff's Complaint against the Stratosphere Corporation, averring that Plaintiff has failed to sufficiently plead the claims against it. Specifically, Defendant avers that Plaintiff's arrest was based on probable cause, thereby estopping these claims. Defendant also avers that Plaintiff's claims are precluded under N.R.S §§ 465.101 and 463.3407. Additionally, Defendant avers that Plaintiff cannot establish the necessary elements for any of his claims.

**II. Standard of Law**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ.

3

P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the nonmoving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

**III.  Discussion**

    **A.  False Arrest and False Imprisonment Claims**

Plaintiff's false arrest and false imprisonment claims fail on several grounds and summary judgment must, therefore, be granted in favor of Defendant. First, the claims fail because the existence of probable cause at the time of arrest provides immunity for Defendant against such

4

claims. Second, these claims fail because Defendant has statutory immunity under N.R.S. § 465.101 and § 463.3407. Because Plaintiff's claims of false arrest and false imprisonment fail on these grounds, the Court grants summary judgment in favor of Defendant.

### 1. Estoppel

Plaintiff's false arrest and false imprisonment claims fail as a matter of law because his arrest was made with probable cause and such an arrest is not actionable. Additionally, because the probable cause for Plaintiff's arrest was confirmed by the Justice Court, Plaintiff is estopped from raising the issue of probable cause in the present action. Even if the Plaintiff were not estopped from raising the issue of probable cause in this matter, he has not met the burden imposed by Rule 56(e)(2), requiring him to set out specific facts showing a genuine issue for trial relating to probable cause. See Fed. R. Civ. P. 56(e). Based on the immunity provided by the existence of probable cause and Plaintiff's failure to meet his Rule 56(e)(2) burden, summary judgment is granted in favor of Defendant on the claims of false arrest and false imprisonment.

"An arrest made with probable cause is privileged and not actionable." Nelson v. City of Las Vegas, 99 Nev. 548, 552 (1983). The existence of probable cause is determined at the moment of the arrest and is based on "whether at that moment the facts and circumstances within [the arresting officers'] knowledge . . . were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964) (citing Brinegar v. United States, 338 U.S. 160, 175–76 (1949). A probable cause determination at a preliminary hearing is conclusive of whether there was probable cause to arrest. Haupt v. Dillard, 17 F.3d 285 (9th Cir. 1994). When such a determination is made, it is "a final, conclusive determination of the issue," meaning a litigant is estopped from raising the issue in a subsequent proceeding so long as "the parties in the two proceedings were the same or in privity." Id. at 288 (citing Marine Bank v. Monroe, 756 P.2d 1193, 1194 (Nev. 1988).

The Justice Court's June 5, 2006 determination that probable cause for Plaintiff's arrest existed at the time he was detained and questioned estops Plaintiff from relitigating the issue in the

present case. The Justice Court's probable cause determination was a final and conclusive determination of the issue and was appealable in the course of the criminal case. It was the result of a three day hearing in which the Justice Court reviewed the facts and circumstances in existence at the time of Plaintiff's arrest. Plaintiff did not appeal this determination during the criminal phase of his case and now seeks to undermine said determination by providing excerpts of testimony given by Agent Olliges in April 2007. Plaintiff avers that this testimony casts doubt upon the probable cause upon which Plaintiff's arrest was based and which was confirmed by the Justice Court in 2005. Although "[p]robable cause to continue a prosecution *may* disappear with the discovery of new exculpatory evidence after a preliminary hearing," the evidence provided in Plaintiff's response "hardly amounts to significant . . . new evidence" that would obviate the probable cause on which his arrest was based. Haupt, 17 F.3d at 290 n.5 (1994). Therefore, because Plaintiff's arrest was based on probable cause, which was later confirmed by the Justice Court at the preliminary hearing, and because Defendant's interests were sufficiently aligned with those of the State during that hearing, Plaintiff is estopped from relitigating the issue of probable cause in this case. As such, the probable cause on which Plaintiff's arrest was based provides immunity for Defendant against Plaintiff's false arrest and false imprisonment claims.

2. <u>N.R.S. § 465.101 and § 463.3407</u>

Plaintiff's false arrest and false imprisonment claims also fail as a result of the statutory immunity provided to Defendant under N.R.S §§ 465.101 and 463.3407. Under N.R.S. § 465.101, a gaming licensee and/or its agents has "the right to take any individual suspected of cheating . . . into custody, detain him in the establishment and question him." Jacobsen v. State, 510 P.2d 856, 861 (Nev. 1973). If such detention is based on probable cause and is carried out in a reasonable manner and for a reasonable time, "the licensee or his agents are granted . . . immunity from criminal and civil liability for false arrest, false imprisonment, slander or unlawful detention." Id.

In determining the applicability of N.R.S § 465.101, the Court notes at the outset that it was Gaming, not Defendant, that detained, questioned, and ultimately arrested Plaintiff Zermeno on May

6

6, 2005. In his Response to Defendant's Motion, Plaintiff sets out no 'specific facts' casting any doubt on Gaming's role in Plaintiff's arrest. Instead Plaintiff relies entirely on "conclusory, self-serving [statements] lacking detailed facts and any supporting evidence" to imply that Defendant Stratosphere was directly responsible for Plaintiff's arrest and imprisonment. FTC v. Publ'g Clearing House, 104 F.3d 1168, 1171 (9th Cir. 1997). Such statements are "insufficient to create a genuine issue of material fact." Id. Because Plaintiff has not provided any specific facts or evidence to demonstrate any direct responsibility on the part of Defendant for the arrest and imprisonment, the claims of false arrest and false imprisonment against Defendant cannot stand. Furthermore, even if Plaintiff had sufficiently demonstrated Defendant's direct responsibility for Plaintiff's detention and arrest, Defendant would still be shielded from these claims under N.R.S. § 465.101, so long as there was probable cause for the detention and the detention was carried out in a reasonable time and manner. Plaintiff has set forth no specific facts that indicate any unreasonableness of the time or manner in which the detention and questioning was carried out. As to the issue of probable cause, the only specific facts set forth by Plaintiff come from the excerpt of testimony given by Agent Olliges discussed above, which fails to cast sufficient doubt on the probable cause determination of the Justice Court. Therefore, because there is no specific evidence of unreasonableness in the timing or manner in which Plaintiff's detention and arrest were carried out and there was probable cause for the detention, Plaintiff's false arrest and false imprisonment claims fail under N.R.S. § 465.101.

These claims also fail under N.R.S. § 463.3407, which provides that a gaming licensee has an absolute privilege against liability for:

> [a]ny communication or document . . . which is made or transmitted to the Board or Commission or any of their agents or employees to: (a) comply with any law or the regulations of the Board or Commission; . . . or (c) Assist the Board or Commission in the performance of their respective duties. N.R.S § 463.3407.

Therefore, Defendant's decision to contact Gaming following what it perceived as suspicious activity does not create liability under Plaintiff's false arrest and false imprisonment claims. Plaintiff attempts to create a direct causal link between the actions of Defendant and Plaintiff's eventual

7

detainment by pointing out that Defendant "initiated" the investigation by contacting Gaming. Even if Plaintiff could sufficiently demonstrate that Defendant's action was the direct and proximate cause of Plaintiff's eventual detention and arrest, these claims would still fail because Defendant's action was privileged under N.R.S § 465.101. Therefore, summary judgment is granted in favor of Defendant on the claims of false arrest and false imprisonment.

### B. The Intentional Infliction of Emotional Distress Claim

"To recover for the intentional infliction of emotional distress, a plaintiff must establish . . . (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress." Nelson, 99 Nev. at 555. Plaintiff has offered no specific facts showing a genuine issue for trial in regards to the intentional infliction of emotional distress ("IIED") claim. Plaintiff states in his Response that Plaintiff Zermeno "has testified under oath that he suffered and continues to suffer emotional, mental and physical distress," (Pl. Resp. at 22–23), seeking to demonstrate that Plaintiff "actually suffered sever or extreme emotional distress," Nelson, 99 Nev. at 555. Even if these facts are true and Plaintiff can establish the third element of an IIED claim, this IIED claim must still fail because he has not provided any specific facts showing that he can meet the other three elements of the claim. Plaintiff's Response fails to demonstrate that Defendant's conduct was extreme and outrageous. Nor does the Response provide any facts showing that Defendant "intended or recklessly disregarded the causing of emotional distress" or "that the [D]efendant's conduct actually or proximately caused the distress." Because Plaintiff relies "merely on allegations" and "conclusory, self-serving" statements to support his IIED claim, the claim fails and summary judgment is granted in favor of Defendant.

8

**IV. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant Stratosphere's Motion for Summary Judgment (#32) is **GRANTED.**

DATED this 2nd day of June 2010.

_____
Kent J. Dawson
United States District Judge